Mackenzie Joy Brennan
105 N. 13th Street, Ste. 401
Brooklyn, NY 11249
Email: MkzJoyBrennan@gmail.com
Defendant, In Propria Persona (Pro Se)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DUSTY BUTTON and MITCHELL TAYLOR BUTTON,<br><br>Plaintiffs,<br><br>v.<br><br>AMBER NELSON, NATALIE JEAN, MACKENZIE JOY BRENNAN, HENRY ZEBROWSKI, BEN KISSEL, MARCUS PARKS, ED LARSON, RYAN CONNOR, and LAST PODCAST NETWORK, LLC,<br><br>Defendants. | **Case No. 2:25-cv-09275-DMG-E**<br><br>**DEFENDANT MACKENZIE JOY BRENNAN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(2), 12(b)(6)]<br><br>Date: September 18, 2026<br>Time: 9:30 a.m.<br>Crtrm.: 8C<br>Judge: Hon. Dolly M. Gee |

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition confirms every defect Brennan's Motion identified, largely by relying on exhibits and theories absent from the FAC. Plaintiffs concede they bear the burden of establishing personal jurisdiction over Brennan, then ask the Court to grant discovery in hopes that will meet their burden for them. They recast their theory as distribution rather than authorship of the contested Episodes, yet still cannot identify a single defamatory statement Brennan made. They ask the Court to overlook what their own new exhibits facially show: the post they now cite is dated within days of the Episodes they admit were published in May - June 2023. Any one of these defects independently warrants dismissal with prejudice.

## I. PLAINTIFFS HAVE NOT CARRIED, AND CANNOT DEFER, THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION

Plaintiffs do not dispute that *Plaintiffs* bear the burden of making a prima facie showing of personal jurisdiction. Opp. at 14 (citing *Data Disc*). Plaintiffs' burden here is indeed settled law: the same decision Plaintiffs invoke holds that "the plaintiff bears the burden of establishing that jurisdiction is proper." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *accord Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Brennan's uncontroverted declaration establishes that she has never lived or worked in California and took no action there relevant to Plaintiffs' claims. Brennan Decl. ¶¶ 4-13. Plaintiffs submit no fact to the contrary. Instead of meeting their burden, the Opposition asks the Court to let discovery meet it for them: "[i]f the Court finds the current record insufficient, Plaintiffs request jurisdictional discovery." Opp. at 15.

That request inverts the legal standard. Jurisdictional discovery is available only where a plaintiff has already made a colorable showing towards jurisdiction and can identify what specific facts discovery would likely produce; it is not a substitute for the prima facie showing itself. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (discovery properly denied where the jurisdictional claim was "both attenuated and based on bare allegations" contradicted by the defendant's own declaration, and where the request was "based on little more than a hunch that it might yield jurisdictionally relevant facts"). The Opposition's own discovery wish list confirms the problem: it seeks Brennan's private messages, deleted content, and analytics not to test a jurisdictional fact Plaintiffs have already pleaded, but to look for one they have not. Opp. at 15. *Walden* forecloses this kind of bootstrapping: jurisdiction "must arise out of contacts that the defendant himself creates with the forum," not out of whatever a plaintiff hopes discovery will turn up. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

*Keeton* and *Mavrix* do not rescue Plaintiffs' theory, because both involved a media entity's own sustained exploitation of a forum market, not one individual's isolated social media post. In *Keeton*, the defendant magazine had circulated tens of thousands of copies into the forum every month for years. 465 U.S. at 772-73. In *Mavrix*, the defendant operated a commercial website whose "audience, and commercial value were intimately tied to California." 647 F.3d at 1229. Brennan is neither a publisher nor an owner of LPN; the FAC attributes the operation and monetization of LPN's media network to other defendants. FAC ¶ 20; Brennan Decl. ¶¶ 4-13. The FAC's exhibits for the podcast Episodes in question further confirm Brennan's absence from their creation. FAC ¶2 n.1-3; *see also* Brennan Decl. exs. A-F. A single Instagram post-- separate from and post-dating the FAC's at-issue content-- that merely tags accounts belonging to the Episodes' creators resembles the passive, referential conduct *Pebble Beach* held insufficient, not the sustained commercial exploitation in *Keeton* and *Mavrix*. *Pebble Beach*, 453 F.3d at 1156-57; *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 941-42 (N.D. Cal. 2024).

**II. THE OPPOSITION'S NEW "DISTRIBUTION" THEORY DOES NOT SUPPLY A STATEMENT BY BRENNAN**

Plaintiffs now argue Brennan is liable for having "participated in, promoted, distributed, and/or amplified" the challenged episodes, rather than for making a statement herself. Opp. at 22-23. That reframing restates the pleading problem rather than solving it. Publication "must be done by the defendant." *Live Oak Publ'g Co. v. Cohagan*, 286 Cal. Rptr. 198, 201 (Ct. App. 1991); *Med. Marijuana, Inc. v. ProjectCBD.com*, 260 Cal. Rptr. 3d 237, 253 (Cal. Ct. App. 2020). Even the republication theory Plaintiffs gesture toward carries the same requirement: a defendant is liable for a statement she did not originate only if she actually "repeats or otherwise republishes" it. Restatement (Second) of Torts § 578 (Am. L. Inst. 1977). One who merely delivers or transmits a statement made

by someone else, without repeating its content, is liable only if she knows or has reason to know of its defamatory character. *Id.* § 581.

Neither the FAC nor the Opposition identifies a single defamatory statement made by Brennan. The FAC's defamation claims arise exclusively from Episodes 71, 72, and 73 of "Some Place Under Neith," a produced and edited audio podcast published on Spotify, Apple Podcasts, and YouTube weeks before the Twitch livestream Plaintiffs' new Exhibits A and B advertise. FAC ¶¶ 2, 31; Brennan Decl. ¶ 10 ("'Some Place Under Neith' is a produced and edited audio podcast, distinct from LPN hosts' online presence on interactive livestreaming or social media sites."). Brennan's Instagram post (Plaintiffs' new Exhibit A, the caption of which is addressed in Section III below) **did not repeat the Episodes' challenged content**; and the FAC and Plaintiffs' new exhibits all attribute the Episodes' substance to Nelson and Jean, not to Brennan. FAC ¶ 46(a). Plaintiffs' own Exhibit B, LPN's promotional post for the same livestream, illustrates the same distinction from the other direction: it is attributed to LPN, and does not cast Brennan as an author of LPN's posts or as liable for any defamatory statements.

Brennan's declaration already accounts for any connection between Brennan and Twitch or LPN-affiliated accounts, in terms tied to what the FAC actually alleges: "I do not maintain a personal account on Twitch (a social live-streaming service where participants can join in a real-time video broadcast) … On limited occasions, more than three years ago and unrelated to the Episodes' creation, I interacted with, tagged, or was tagged in livestreaming or social media accounts maintained by individuals who worked at LPN and whom I then knew socially. Any such post/tag reflected a personal relationship**; not employment or compensation by, contractual affiliation with, or editorial control over LPN or the Episodes**." Brennan Decl. ¶ 10 (emphasis added). Plaintiffs offer nothing to controvert this.

Plaintiffs' Exhibit D does not change the analysis. It is a screenshot of Brennan's personal website, itself marked “[UNDER CONSTRUCTION],” describing a later, separate dispute unrelated to the Episodes: a falling-out with LPN individuals over misconduct allegations against an LPN owner. This falling-out accounted for the cessation of contact between Brennan and LPN after October 2023 already described in Brennan Decl. ¶ 10. Whatever informal language that under-construction post uses to describe “a number of years affiliated (professionally & socially)” with LPN, neither Plaintiffs nor the exhibit itself contend that Brennan was ever an “owner, member, officer, employee, or independent contractor” of LPN, that she ever had “editorial control over LPN or the Episodes,” or that she ever “received compensation” or held any “ownership, employment, or contractual relationship” with LPN “of any kind”— the specific, true, and unrebutted terms of Brennan's declaration. Brennan Decl. ¶ 4, 9, 10.

What remains against Brennan is the same "on-air contributor and/or" allegation pleaded "upon information and belief" already addressed in the Motion. FAC ¶¶ 9, 33, 45; *Iqbal*, 556 U.S. at 678. A new label does not cure a pleading gap, and the theory still remains pleaded only against "Defendants" as an undifferentiated group. *Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. Jan. 29, 2026).

## III. "ALLEGED CHILD PREDATORS" REMAINS PRIVILEGED, AND PLAINTIFFS DO NOT ADDRESS THE PRIVILEGE THAT DISPOSES OF IT

Plaintiffs' only response to the fair-report privilege is to list it, once, among several defenses they call "overbroad." Opp. at 25. They do not engage Civil Code section 47(d)(1), and they do not attempt to distinguish *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 261-62 (1984), which holds the privilege applies whenever a report captures "the substance, the gist, the sting" of a judicial proceeding, regardless of the reporting party's motive. Plaintiffs do not dispute they are defendants in *Humphries et al. v. Button*, No. 2:21-cv-01412 (D. Nev.) (FAC ¶ 24), **a publicly filed federal action**

**alleging sex trafficking and sexual abuse of minors.** A social-media reference to "alleged child predators" falls within the privilege on its face, even if the FAC had challenged this statement.

*Milkovich* does not change this. It holds only that a statement is not immune from liability merely by being framed as opinion where it implies a false assertion of objective fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990). Brennan's post implies no false fact: the word "alleged" accurately signals that the accusations are pending and unproven, and Plaintiffs do not dispute that they exist. A statement is not converted into a false factual assertion by accurately describing what a real complaint alleges. Cf. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (a statement is actionable only where it produces an effect on the reader materially different from what the pleaded truth would have produced). Because the privilege and pleading defects above dispose of the claims against Brennan without reaching Plaintiffs' public-figure and actual-malice arguments, Brennan does not re-brief them here beyond what the Motion already argues in the alternative.

## IV. THE OPPOSITION CONFIRMS THE STATUTE-OF-LIMITATIONS BAR, AND PLAINTIFFS MAY NOT FAULT BRENNAN FOR THE FOUR CORNERS RULE WHILE SUBMITTING SIX EXHIBITS OF THEIR OWN

Plaintiffs devote several pages to warning the Court against considering anything outside the FAC's four corners. Opp. at 17-18 (invoking *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), and *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)). They then submit six exhibits, none pleaded in, attached to, or incorporated by reference in the FAC, and ask the Court to rely on them to save every claim they discuss. Joint Decl. of D. & M.T. Button, Exs. A-F. Rule 12(d) does not work only in one direction: a court either excludes matter outside the pleadings on a Rule 12(b)(6) motion or converts it to one for summary judgment with proper notice to both sides. Fed. R. Civ. P. 12(d). Whatever weight *Khoja* carries here, it applies equally to Plaintiffs' own submissions.

To the extent the Court considers them, Exhibits A and B defeat rather than support the discovery Plaintiffs seek. The Opposition claims the timing of the Twitch stream "must be obtained in discovery" before the limitations period can be assessed. Opp. at 25-26. But Plaintiffs' own Exhibit B, LPN's promotional post for the same stream Brennan's post announced, is dated on its face: June 6, 2023, promoting a stream for "Thursday, 6/8." That places the promoted stream following within days of Episodes 71-73's own May - June 2023 publication. FAC ¶ 31. Plaintiffs do not need discovery to learn what their own exhibit already shows. The one-year limitations period for defamation runs from publication, Cal. Civ. Proc. Code § 340(c); *Shively v. Bozanich*, 80 P.3d 676, 688-89 (Cal. 2003), and the discovery rule does not toll claims based on material that was continuously and publicly available. *Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 893 (2007); *Cusano v. Klein*, 264 F.3d 936, 949 (9th Cir. 2001). Plaintiffs' own exhibits confirm the promotional post, like the actual at-issue Episodes, was publicly accessible.

Plaintiffs' Exhibit C independently undermines their pleaded discovery date as well. Exhibit C is a screenshot of Brennan's Instagram profile, and a profile grid displays only an account's current posts. Plaintiffs' screenshot could only have been captured while the post occupying the "most recent" position, a post dated September 8, 2024, was in fact Brennan's most recent post; her next post did not appear until September 17, 2024. Suppl. Brennan Decl. ¶¶ 2-3**. Exhibit C therefore must have been captured between September 8 and September 17, 2024, more than two months before the December 2024 discovery date the FAC pleads. FAC ¶¶ 37-42.** Whatever significance Plaintiffs attach to that exhibit, it places Plaintiffs in a position to view Brennan's account well before the date Plaintiffs assign to their own discovery of the challenged material.

## V. THE MEET-AND-CONFER RECORD PLAINTIFFS SUBMITTED DEFEATS THEIR OWN ARGUMENT

Plaintiffs argue Brennan's Motion exceeds what was discussed at the meet-and-confer conference because she did not preview every defense in advance. Opp. at 16-17. Local Rule 7-3 requires parties to discuss the “substance of the contemplated motion.” It does not require a movant to disclose every if-reached sub-argument or citation that will appear in her brief, and Plaintiffs cite no authority otherwise. C.D. Cal. L.R. 7-3. The record Plaintiffs themselves submitted shows Brennan did what the rule requires: before the conference, she told Plaintiffs she would move "under 12(b)(2) lack of personal jurisdiction and 12(b)(6) failure to state a claim." Ex. E. That is the substance of the motion.

The same exhibit shows why no further narrowing was realistic. Plaintiffs' own pre-conference questions sought Brennan's position on matters outside the FAC's four corners, including her Instagram account's ownership, the location of Twitch recordings, and a promotion and republication theory not yet pleaded. Ex. E. Brennan told Plaintiffs in writing, before the conference, that those questions fell "outside the four corners of the complaint's allegations and thus outside the scope of a defendant's motion to dismiss." *Id.* That position was correct then and remains correct now, for the reasons above. A conference cannot narrow a dispute where one side's questions are addressed to discovery Plaintiffs are not yet entitled to. Plaintiffs do not identify a single ground in Brennan's Motion that additional conferral would have resolved or narrowed; and to the extent any specific, non-merits dispute remains, Brennan remains willing to discuss it.

**CONCLUSION**

For the reasons above and in Brennan's Motion, the Court should dismiss all claims against Brennan under Rule 12(b)(2) and 12(b)(6), with prejudice.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Reply in Support of Motion to Dismiss, and the accompanying Supplemental Declaration of Mackenzie Joy Brennan, were served on August 30, 2026 via the Court's CM/ECF electronic-filing system on Plaintiffs Dusty Button and Mitchell Taylor Button, and on all parties registered to receive electronic notice.



Mackenzie Joy Brennan

Defendant, In Propria Persona (Pro Se)

## CERTIFICATE OF COMPLIANCE

The undersigned, Defendant Mackenzie Joy Brennan, appearing pro se, certifies that this brief contains approximately 2,400 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: August 30, 2026

Respectfully submitted,

Mackenzie Joy Brennan

Defendant, In Propria Persona (Pro Se)